UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BAZOOKA COMPANIES, INC.,

                    Plaintiff,

     -against-

CLASSIC CONFECTIONS ENTERPRISES, INC.,

                    Defendant.

Civil Case No. _____

**<u>VERIFIED COMPLAINT
AND JURY DEMAND</u>**

Plaintiff The Bazooka Companies, Inc. ("Plaintiff" or "Bazooka"), by and through its undersigned counsel, for its Verified Complaint against Defendant Classic Confections Enterprises, Inc. ("Defendant" or "Classic Confections") alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.    This action concerns Defendant's intentional breach of a settlement agreement and willful violation of Bazooka's copyright, trademark, and trade dress rights in a candy known throughout the world as "RING POP."

2.    Since 1975, Bazooka or its predecessor-in-interest, The Topps Company, Inc. ("Topps"), has held all rights, title, and interest in and to the RING POP trademarks and trade dress.

3.    Bazooka uses the RING POP trademarks and trade dress in connection with its iconic candy products that have an inherently distinctive name, shape, design, lettering, and candy flavor names.

4.    Bazooka has amassed considerable goodwill through its continuous and exclusive use of the RING POP trademarks and trade dress, which have become famous.

5.     Bazooka owns numerous U.S. trademark and trade dress registrations for the RING POP trademarks and trade dress.

6.     Bazooka also owns the exclusive rights to the creative authorship and visual material embodied in the product packaging and floor displays for its RING POP candy products and holds valid U.S. copyright registrations for same.

7.     In mid-2019, Bazooka's predecessor-in-interest, Topps, discovered that Classic Confections was marketing, distributing, offering for sale, and selling candy products under the designation "Jewel Pop" that were identical to Bazooka's RING POP candy products.

8.     At the conclusion of its investigation, Topps sent Classic Confections a cease-and-desist letter.

9.     After much back-and-forth discussion, and, upon information and belief, protracted and intentional delays by Classic Confections, the parties entered into a binding, non-confidential settlement agreement dated November 25, 2019 ("the Settlement Agreement").  *See* **Exhibit A**.

10.     Pursuant to the Settlement Agreement, Classic Confections agreed to, *inter alia*, immediately cease marketing candy products bearing any resemblance to RING POP, immediately cease its sales of related inventory, and immediately cease the development of products displaying the RING POP design.

11.     However, in connection with a separate investigation into infringement by Classic Confections of another Bazooka candy product, BABY BOTTLE POP,[1] Bazooka recently learned that Classic Confections intentionally breached the Settlement Agreement and has continued to sell and distribute imitation RING POP candy products in flagrant disregard for Bazooka's

---

[1] The BABY BOTTLE POP infringement is the subject of a separate pending lawsuit filed in the District of New Jersey captioned, *The Bazooka Companies, Inc. v. Classic Confections Enterprises, Inc.*, Case No. 2:22-cv-01312-KM-CLW.

intellectual property rights.  Pursuant to the Settlement Agreement, any dispute arising from the Settlement Agreement will be prosecuted in a New York court.  *See id.* ¶ 9(f).

12.     Bazooka therefore brings this action for (1) breach of contract, (2) trademark infringement under the Lanham Act, 15 U.S.C. § 1114, (3) trade dress infringement under the Lanham Act, 15 U.S.C. § 1114, (4) dilution under the Lanham Act, 15 U.S.C. § 1125(c), (5) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), (6) copyright infringement, 17 U.S.C. 101, *et seq.*, (7) unfair competition and passing off under New York common law, and (8) injury to business reputation and dilution, N.Y. Gen. Bus. Law § 360-l.

## **THE PARTIES**

13.     Plaintiff Bazooka is a Delaware corporation that has its principal place of business at One Whitehall Street, New York, NY 10004.

14.     Defendant Classic Confections is a New York corporation that operates under the assumed name "Classic Confections," which it recorded with the New York Department of State on January 31, 2011.

15.     New York Department of State records identify Classic Confections' service of process address as: 1663 59th Street, Brooklyn, NY 11204.

## **JURISDICTION AND VENUE**

16.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367 and the principles of supplemental jurisdiction.

17.     Defendant is subject to the Court's personal jurisdiction because Defendant, in the Settlement Agreement, agreed that any dispute relating to or arising from the Settlement Agreement would be prosecuted exclusively in a court of competent jurisdiction in New York

City, New York, and agreed to submit to personal jurisdiction in state and federal courts in the State of New York.

18. Defendant is also subject to the Court's personal jurisdiction because, upon information and belief, Defendant conducts business in this District and has committed torts in this District.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (b)(3) and the forum selection clause contained in the Settlement Agreement.

## FACTUAL ALLEGATIONS

### *Bazooka's Trademark, Trade Dress, and Copyright Rights*

20. Bazooka is a leading confectionary company that manufactures, markets, distributes, and sells a variety of candy products, including RING POP candy products, BAZOOKA bubble gum, BABY BOTTLE POP, and PUSH POP candy products.

21. Bazooka's candy products have become well known in the marketplace because of their quality and how they incorporate distinctive designs that are interactive, making the candy unique and memorable.

22. Since 1975, Bazooka, including through its predecessor-in-interest, Topps, has continuously and exclusively used the name and mark RING POP (the "RING POP Mark" or "Mark") in connection with its candy and related products.

23. Bazooka is the exclusive owner of the trade dress featured in its RING POP product design, which feature a hard candy in the configuration of a jewel with facets mounted on a stylized ring, as shown below (the "RING POP Trade Dress" or "Trade Dress").



24.     The RING POP Trade Dress maintains a consistent overall look and feel throughout Bazooka's line of RING POP candy products.  The RING POP Trade Dress is aesthetic only as a whimsical "interactive" candy and serves no functional purpose.

25.     Bazooka owns the following trademark and trade dress registrations issued by the U.S. Patent & Trademark Office:

| Reg. No. | Registration Date | Trademark or Trade Dress | Goods/Services |
|---|---|---|---|
| 1040693 | June 1, 1976 | RING POP | Class 30: Hard candy |
| 1846873 | July 26, 1994 | | Class 30: Candy |
| 3009371 | October 25, 2005 | RING POP | Class 25: shirts, footwear, socks [, flip flops] |
| 3013798 | November 8, 2005 | RING POP | Class 3: Lip gloss |
| 5450910 | April 24, 2018 | RING POP | Class 30: Candy |
| 5634164 | December 18, 2018 | RING POP | Class 28: Toys, namely, collectable toy animal figures and accessories therefor |
| 5927235 | December 3, 2019 | | Class 28: Toys, namely, collectable toy animal figures and accessories therefor |

26.     The above-referenced trademark and trade dress registrations owned by Bazooka, are valid, subsisting, in full force and effect, and are registered on the Principal Register. Copies of these registrations are attached hereto as **Exhibit B**. Further, U.S. Reg. Nos. 1040693, 1846873, 3009371, and 3013798, have become incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

27.     Bazooka is the sole and exclusive owner of all common law trademark and trade dress rights for RING POP.

28.     Bazooka is also the owner of all rights, title, and interest in and to the creative authorship embodied in the product packaging and floor display for its RING POP candy products, as shown below (the "Copyrighted Works").

| Bazooka's RING POP Product Packaging | Bazooka's RING POP Floor Display |
|---|---|
|  |  |

29.     Bazooka owns copyright registrations for the visual material in the RING POP product packaging (U.S. Reg. No. VA0002185452) and floor display (U.S. Reg. No. VA0002187136). *See* **Exhibit C**.

30.     Bazooka's RING POP candy comes in a variety of flavors with imaginative names, such as "Berry Blast" and "Blue Raspberry" as well as a "Sours" flavor option, as shown below.



31.     Bazooka also offers a "Twisted" flavors option that incorporates two different flavors in one candy product, as shown below.



32.     Bazooka has also introduced seasonal and holiday varieties of its RING POP candy, including, for example, Valentine's Day, the Fourth of July, Halloween, and Christmas.

33.     Bazooka has invested significant financial resources—including for advertising campaigns and promotional and sales efforts—to develop and foster the reputation, recognition, and goodwill associated with its candy products bearing the RING POP Mark and Trade Dress.

34.     For example, Bazooka has spent millions of dollars on advertising candy products branded with the RING POP Mark and featuring the Trade Dress.

35.     Consumers regularly encounter products featuring the RING POP Mark and Trade Dress prominently displayed on television programming (e.g., Nickelodeon), Internet/digital platforms, social media (including Facebook, Instagram, and YouTube), and through in-store promotions.

36.     Candy products bearing the RING POP Mark and Trade Dress regularly receive unsolicited media coverage and consumer reviews.

37.     Celebrities and consumers have even used Bazooka's RING POP candy products to propose to their significant others or as a stand-in for a wedding ring.  *See* **Exhibit D**.  There is simply no doubt that the RING POP Mark and Trade Dress are famous.

38.     Bazooka's candy products featuring the RING POP Mark and Trade Dress have enjoyed enormous commercial success.

39.     Bazooka distributes and sells candy products branded with the RING POP Mark and featuring the Trade Dress both online and through brick-and-mortar retail stores in all 50 states and throughout the world.

40.     Consumers in the United States regularly encounter products featuring the RING POP Mark and Trade Dress at national supermarkets and retail stores, such as Walmart, and through leading e-commerce websites, such as Amazon.com.

41.     Based on this widespread, long-term, and prominent use, the RING POP Mark is

distinctive and famous and has been so long prior to Defendant's acts complained of herein.

42.     Consumers recognize the RING POP Trade Dress as identifying Bazooka as the exclusive source of products featuring the RING POP Trade Dress.

43.     As a result of the time, effort and money invested in its business, and Bazooka's continuous and substantial use of the RING POP Mark and Trade Dress for nearly half a century, the Mark and Trade Dress have become assets of enormous value to Bazooka.

### Classic Confections' Prior Infringement of Bazooka's Rights

44.     Classic Confections, upon information and belief, operates a website, located at http://classicnyc.com/, which describes Classic Confections as a "distributor of [K]osher sweets with an extensive line of unique and innovative snacks and gourmet candy."  The website also states that Classic Confections' "objective is to discover and supply the consumer with the most creative and select items from around the globe."

45.     Upon information and belief, Classic Confections manufactures, advertises, promotes, offers to sell, sells, and distributes a variety of candy products under the brand names "DEE BEST" and "DOVELI" through an online catalog available on its website, through third-party websites, and in brick-and-mortar stores.

46.     Classic Confections has held a trademark registration for DEE BEST (including a design) covering "confections namely, candies wafers cookies and chocolates" in Class 30 since April 2014 (U.S. Reg. No. 4503973) and has submitted trademark applications for DOVELI in the same class for "Candy; Candies" (U.S. Serial Nos. 97087994, 97087992).

47.     In 2019, Bazooka's predecessor-in-interest, Topps, discovered that Classic Confections was manufacturing, distributing, and selling several different "Jewel Pop" candies under its DEE BEST brand that were identical to the RING POP candy products, in violation of

Topps' trademark and trade dress rights in and to the famous RING POP Mark and Trade Dress, as shown in the side-by-side comparison below.

| **Bazooka's RING POP** | **Classic Confections' Infringing Jewel Pop** |
|---|---|
|  | |

48.     As apparent from the product design and Classic Confections' choice of name—*Jewel* Pops—Classic Confections was blatantly attempting to profit off of the close resemblance and association between Classic Confections' imitation products and Topps' RING POP candy.

49.     Topps never authorized Classic Confections to copy or use its RING POP Mark or Trade Dress.

50.     On or about August 1, 2019, Topps sent a cease-and-desist letter to Classic Confections, demanding that it immediately cease all infringement of Topps' rights and provide an accounting of its inventory of infringing products and sales of same.

51.     Classic Confections initially refused to comply with Topps' demands, and only agreed to cease its sales of the infringing products after Topps indicated its intent to commence litigation.

52.     Though the parties ultimately agreed to a settlement in principle, Classic

Confections delayed for months before entering into the Settlement Agreement.  *See* **Exhibit A**.

53.     After Topps sold the sports and entertainment division of its company to Fanatics, Inc. in December 2021, Topps spun its candy and confectionary division off into an independent company, Bazooka, and assigned all right, title, and interest in and to its global candy and confectionary portfolio to Bazooka.  Copies of the assignments for the RING POP trademark, trade dress, and copyright rights from Topps to Bazooka are attached hereto as **Exhibit E**.

54.     The Settlement Agreement thus has inured to the benefit of Bazooka as Topps' successor.

### The Parties' Settlement Agreement

55.     Pursuant to the Settlement Agreement, Classic Confections agreed to, *inter alia*:

a.     "immediately [] cease all importation, promotion, marketing, and advertising in any medium and trade channels of any Jewel Pops or other confectionary products using, bearing, incorporating or otherwise displaying the Ring Pop Design";

b.     "immediately . . .  remove server postings, social media and all other web site presence of any Jewel Pops or other confectionary products using, bearing, incorporating or otherwise displaying the Ring Pop Design in the possession, control or effective control of Classic Confections";

c.     "immediately cease [] all sales and fulfillment of orders of the Inventory worldwide";

d.     "immediately cease . . . all development of any additional products using,

bearing, incorporating or otherwise displaying the Ring Pop Design";

e.      "completely destroy [] all non-HKC Inventory";

f.      "completely destroy . . . all plates, molds, and other means of making or displaying the Ring Pop Design in the possession, control or effective control of Classic Confections";

g.      "completely destroy . . .  all labels, signs, prints, packages, wrappers, marketing and sales materials and receptacles bearing or showing the Ring Pop Design"; and

h.      "immediately and hereafter forever refrain from (a) designing, developing, selling, offering to sell, advertising, manufacturing, importing, causing others to manufacture, or import any products using, bearing, incorporating or otherwise displaying the Ring Pop Design; and/or (b) causing or assisting any other persons (or entities) from engaging in any matter contemplated in this Paragraph."

Exhibit A ¶¶ 2(b), 2(c), 2(d), 4.

56.     The Settlement Agreement provided for a limited sell-off period for specific, designated product, pursuant to which Classic Confections was permitted to sell off inventory through limited retail sales at physical locations in specific geographic areas of New York and New Jersey from November 1, 2019 to January 31, 2020.  *See id.* ¶ 2(f).

57.     Though Classic Confections did not provide inventory information as required by the Settlement Agreement despite repeated follow ups by Topps, on or about February 24, 2020—*i.e.*, following the limited sell-off period—Classic Confections provided an affidavit from an officer, Eli Nadler, stating that it destroyed its remaining inventory of products.  *See* **Exhibit F**.

58.     In the affidavit, the officer certified that this statement was true to the best of his knowledge and belief and stated that he understood he would be subject to disciplinary action in the event that the above facts are found to be falsified.  *See id.*

59.     The Settlement Agreement includes a release and covenant not to sue by Topps (and thereby Bazooka), but states that this provision "shall be void in the event that Classic Confections breaches this Agreement."  Exhibit A ¶ 6.

60.     Pursuant to the Settlement Agreement, Classic Confections also acknowledged that any breach of the foregoing provisions by Classic Confections "will cause Topps [and thereby Bazooka] irreparable harm, and that such breach shall be enforceable by specific performance and/or injunctive relief sufficient to remedy and reverse any such breach, all without any obligation to file any bond."  *Id.* ¶ 3.

### Classic Confections' Material Breaches of the Settlement Agreement and Ongoing Infringement of Bazooka's Rights

61.     Earlier this year, Bazooka learned, through the efforts of a third-party investigator, that infringing Jewel Pop products identical to Bazooka's RING POP candy products, as shown below, continued to remain available for sale both in-person and online through grocery and retail locations in New York and New Jersey.  *See* **Exhibit G**.



62.    Classic Confections also hijacked the specific flavor varieties that Bazooka has incorporated into its RING POP candy products, including the "sour and "twist" Bazooka flavors.

63.    Upon information and belief, Classic Confections has thus continued to distribute its infringing Jewel Pop products beyond the parameters of the limited sell-off period in an intentional and material breach of the Settlement Agreement.

64.    Upon information and belief, Classic Confections also failed to destroy its remaining inventory, means of making infringing products, and all labels and packaging materials in an intentional and material breach of the Settlement Agreement.

65.    As a result, upon information and belief, Classic Confections' officer provided false information in his affidavit, in which he attested to the total destruction of the remaining inventory. *See* Exhibit F.

66.    Additionally, Bazooka discovered that Classic Confections had materially breached the Settlement Agreement by continuing to use "Jewel Pop" and by developing a slightly modified version of the candy—that still featured a hard candy in the configuration of a jewel with facets mounted on a stylized ring, as shown below—which it is currently marketing, promoting, advertising, distributing, offering to sell, and selling.

 

67.     Upon information and belief, Classic Confections' continued use of the "Jewel Pop" name, which invokes the design of a jewel—Bazooka's famous Trade Dress—is an intentional effort to trade off of Bazooka's goodwill.

68.     Moreover, despite the image of a rounder-shaped pop on the outside of the packaging, once opened, the candy inside does not match the image.

69.     Even with a slight modification, Classic Confections has continued to copy and use Bazooka's Trade Dress.

70.     Further investigation revealed that Classic Confections is also marketing, promoting, advertising, distributing, offering to sell, and selling seasonal and holiday versions of its Jewel Pop products with the modified candy design under the "DOVELI" brand name, as shown below, similar to Bazooka's seasonal and holiday RING POP varieties.



71.     Upon information and belief, Classic Confections does not employ the same quality control standards as Bazooka so Classic Confections' Jewel Pop candy products are of an inferior quality to Bazooka's RING POP candy products because the Jewel Pop candy products are not uniform in shape.

72.     In addition to its material breaches of the Settlement Agreement and violations of Bazooka's trademark and trade dress rights, Bazooka also discovered that Classic Confections had copied Bazooka's Copyrighted Works to create imitation packaging for its Jewel Pop products.

73.     Upon information and belief, Classic Confections had access to and copied the original, protectable elements of Bazooka's Copyrighted Works, along with the overall composition and selection of same.

74.     For example, Bazooka's Copyrighted Works contain specific creative elements, including the appearance of a large colored jewel with facets atop a different colored ring with colored graphic design behind the figure highlighting the jewel.  The jeweled ring appears alongside stylized word designs over a colored background with further graphic design of stripes and stars.

75.     Classic Confections' product packaging for its Jewel Pop products contain many of the same designs in a similar layout—namely, a large colored jewel with facets atop a different colored ring with colored graphic design behind the figure highlighting the jewel, alongside stylized word designs over a colored background with graphic designs of stars and/or swirls.

76.     Classic Confections unlawfully appropriated Bazooka's protected expression by creating unauthorized derivative works that Classic Confections displayed on its website and third-party websites, sold, and distributed to third-party retailers for further distribution and sale.

77.     As evident from a comparison of the Bazooka's copyrighted works and Classic Confections' product packaging, the works are substantially similar.

78.     Bazooka never authorized Classic Confections to copy, use, reproduce, or create derivatives of its copyrighted works.

79.     Classic Confections has made the modified Jewel Pop products available for sale

through its own website, third-party brick-and-mortar grocery and retail stores in New York and New Jersey, and online through third-party websites and Amazon.com. Several of these sales outlets are accessible internationally, including in Canada, the United Kingdom, and Israel. *See* **Exhibit H**.

80.    Classic Confections has also used the designation "Ring Pop" in its advertising, marketing, promotion, and offers to sell its Jewel Pops. *See* **Exhibit I**.

81.    As a result, a search for "Ring Pop" on Amazon.com shows Bazooka's RING POP candy products and Classic Confections' Jewel Pop candy products alongside each other, as shown below.



82.    Classic Confections' use of Bazooka's RING POP Mark and Trade Dress has confused consumers as the source of the products.

83.    For example, Amazon.com reviews for Classic Confections' Jewel Pop products are littered with examples of consumers referring to Classic Confections' imitation products as "ring pop" products. *See* **Exhibit J**.

84.     These consumers have also noted the inferior quality of Classic Confections' Jewel Pop products.  *See id.*

85.     On May 5, 2022, Bazooka sent a notice of breach and cease-and-desist letter to Classic Confections.  *See* **Exhibit K**.

86.     To date, Classic Confections has not responded to this letter.

87.     Upon information and belief, Classic Confections' numerous material breaches of the Settlement Agreement were intentional because Classic Confections agreed to cease the very activities it is continuing to do in order to free ride off of Bazooka's brand and goodwill.

88.     Classic Confections' unauthorized use of the RING POP Mark, Trade Dress, copyrights and its distribution and sale of the Jewel Pop products directly infringes on Bazooka's copyright, trademark, and trade dress rights and dilutes Bazooka's reputation and goodwill in the famous RING POP Mark and Trade Dress.

89.     As a direct and proximate result of Classic Confections' infringements of Bazooka's RING POP Mark, Trade Dress, and copyrights, Bazooka has suffered and will continue to suffer great damage and irreparable harm that cannot be fully compensated or measured in money damages.

90.     Because Classic Confections has continued to distribute and sell imitation candy products in clear breach of the parties' Settlement Agreement and in violation of Bazooka's intellectual property rights, Bazooka has a good-faith belief that court intervention is necessary to stop Classic Confections from further infringing its rights in and to the RING POP Mark, Trade Dress, and Copyrighted Works.

91.     Bazooka is thereby entitled to injunctive relief against Classic Confections, as well as all other remedies available under the Lanham Act, Copyright Act, and New York State law

including, without limitation, damages in an amount to be proven at trial, statutory penalties, disgorgement of Classic Confections' profits, as well as attorneys' fees and costs.

### COUNT I
### (Breach of Contract)

92.     Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

93.     The Settlement Agreement attached hereto as Exhibit A is a valid, binding, and enforceable agreement between Bazooka (as the successor-in-interest to Topps) and Classic Confections.

94.     The Settlement Agreement required Classic Confections to, *inter alia*, cease importation, development, designing, promotion, marketing, advertising, offering to sell, and sales of any Jewel Pops or other products incorporating or displaying the RING POP Mark.

95.     Classic Confections materially breached the Settlement Agreement by continuing to design, develop, manufacture, import, distribute, market, advertise, offer to sell, and sell Jewel Pop products that incorporate the RING POP Mark and Trade Dress.

96.     Bazooka has performed all of its obligations under the Settlement Agreement.

97.     Classic Confections' breaches of the Settlement Agreement have caused and continues to cause damage to Bazooka in an amount to be determined at trial.

### COUNT II
### (Trademark Infringement, 15 U.S.C. § 1114)

98.     Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

99.     Bazooka owns U.S. registered trademarks for the RING POP Mark, which are in full force, effective, and enforceable.

100.    Classic Confections is, without consent or authorization, intentionally and knowingly using, reproducing, manufacturing, marketing, displaying, distributing, and/or selling, in interstate commerce, candy products under the designation "Jewel Pop."

101.    Classic Confections is also, without consent or authorization, intentionally and knowingly using the designation "Ring Pop" in connection with its marketing, advertising, promotion, distribution, and offers to sell its Jewel Pop candy products.

102.    Classic Confections' "Jewel Pop" designation and use of "Ring Pop" in connection with candy products is confusingly similar to Bazooka's RING POP Mark and has actually confused consumers.

103.    Classic Confections is using and reproducing in interstate commerce confusingly similar designations without authorization to bolster the sales of its own candy products, thereby misappropriating the goodwill associated with Bazooka's brand.

104.    Classic Confections' conduct has caused and continues to cause damage and injury to Bazooka's brand, goodwill, and reputation.

105.    Classic Confections' conduct therefore constitutes trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114.

106.    Bazooka has suffered, and will continue to suffer, irreparable harm from Classic Confections' acts and conduct complained of herein, unless restrained by law.

107.    Bazooka has no adequate remedy at law.

## COUNT III
**(Trade Dress Infringement, 15 U.S.C. § 1114)**

108.    Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

109.    Bazooka owns U.S. registrations for the RING POP Trade Dress, which are in full

force, effective, and enforceable, and Bazooka has the exclusive right to use the RING POP Trade Dress in United States commerce for candy products.

110.   Bazooka's exclusive rights in and to the RING POP Trade Dress predate any rights that Classic Confections could establish in and to the infringing trade dress featured in the Jewel Pop products.

111.   Bazooka's RING POP Trade Dress is inherently distinctive, has acquired distinctiveness, and is non-functional.

112.   Classic Confections' infringing trade dress is nearly identical to and creates the same overall commercial impression as Bazooka's RING POP Trade Dress.

113.   The candy products featuring Classic Confections' infringing trade dress and Bazooka's RING POP Trade Dress are the same and appeal to overlapping customer bases.

114.   Classic Confections' use of the infringing trade dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products is likely to cause, and already has caused, consumer confusion, mistake, and/or deception about whether Classic Confections is an authorized distributor or affiliate of Bazooka, or whether the Jewel Pop candy products originated from or was sponsored or approved by Bazooka.

115.   Bazooka has not consented to Classic Confections' use of the infringing trade dress for any purpose.

116.   Upon information and belief, Classic Confections had actual and constructive knowledge of Bazooka's superior rights in and to the RING POP Trade Dress prior to Classic Confections' adoption and first use of the infringing trade dress.

117.     Upon information and belief, products featuring the infringing trade dress are inferior in quality to products featuring the RING POP Trade Dress.

118.     Upon information and belief, Classic Confections copied, adopted, and/or used the infringing trade dress in interstate commerce in furtherance of its willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of products featuring the RING POP Trade Dress.

119.     Upon information and belief, Classic Confections has made, and will continue to make, substantial profits and gain from its use of the infringing trade dress in interstate commerce, to which Classic Confections is not entitled at law or in equity.

120.     Classic Confections' acts and conduct complained of herein constitute trade dress infringement in violation of 15 U.S.C. § 1114.

121.     Bazooka has suffered, and will continue to suffer, irreparable harm from Classic Confections' acts and conduct complained of herein, unless restrained by law.

122.     Bazooka has no adequate remedy at law.

**COUNT IV**
**(Dilution, 15 U.S.C. § 1125(c))**

123.     Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

124.     Bazooka is the owner of the registered RING POP Mark and Trade Dress.

125.     The Mark and Trade Dress are suggestive and have acquired distinctiveness through long and continuous use.

126.     Bazooka's long, continuous, and extensive use of the RING POP Mark and Trade Dress over nearly 47 years has caused the RING POP Mark and Trade Dress to become famous,

as defined under 15 U.S.C. § 1125(c).

127.    Upon information and belief, Classic Confections' use of the RING POP Mark and Trade Dress began in or around 2019, well after Bazooka's RING POP Mark and Trade Dress became famous.

128.    Classic Confections' use of the RING POP Mark and Trade Dress dilutes the distinctive value of Bazooka's RING POP Mark and Trade Dress by lessening the capacity of Bazooka to identify and distinguish its goods and services from those of others.

129.    Classic Confections' deliberate and willful violation of Bazooka's rights in and to the RING POP Mark and Trade Dress has caused and will continue to cause damage to Bazooka, as well as to the reputation associated with Bazooka's RING POP Mark and Trade Dress.

130.    Classic Confections' conduct constitutes dilution pursuant to 15 U.S.C. § 1125(c).

131.    Bazooka has suffered, and will continue to suffer, irreparable harm from Classic Confections' acts and conduct complained of herein, unless restrained by law.

132.    Bazooka has no adequate remedy at law.

## COUNT V
**(False Designation of Origin and Unfair Competition, 15 U.S.C. § 1125(a))**

133.    Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

134.    Classic Confections' use of the RING POP Mark in commerce is a false designation of origin, a false or misleading description of fact, or a false or misleading representation of fact.

135.    Classic Confections' aforesaid use of the RING POP Mark is likely to cause confusion or mistake, or to deceive as to the origin, sponsorship, or approval of Bazooka's goods, services, and/or commercial activities.

136.    Classic Confections' aforesaid conduct constitutes false designation of origin and

unfair competition pursuant to 15 U.S.C. § 1125(a).

137.    Classic Confections' conduct has caused damage to Bazooka and will cause further irreparable injury to Bazooka if it is not restrained by this Court from further violation of Bazooka's intellectual property rights.

138.    Bazooka has no adequate remedy at law.

## <u>COUNT VI</u>
### (Copyright Infringement, 17 U.S.C. § 101 *et seq.*)

139.    Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

140.    Bazooka's RING POP product packaging and floor display contain original works of creative authorship that are protected under the U.S. Copyright Act.

141.    Bazooka owns all exclusive rights in and to the Copyrighted Works and owns federal copyright registrations for same.

142.    Upon information and belief, Classic Confections had access to and copied the Copyrighted Works.

143.    Classic Confections infringed Bazooka's copyrights by knowingly copying, reproducing, displaying, distributing, offering for sale, and selling unauthorized derivatives of the Copyrighted Works that are substantially similar to the original Copyrighted Works in violation of Bazooka's exclusive rights under 17 U.S.C. § 106.

144.    Upon information and belief, Classic Confections' aforementioned conduct is willful, deliberate, intentional, and in bad faith because Classic Confections knew or had reason to know of Bazooka's ownership of the creative authorship embodied in Copyrighted Works and deliberately copied the Copyrighted Works for its own commercial advantage.

145.    Classic Confections' aforementioned acts constitute willful copyright infringement in violation of the Copyright Act.

146.    Bazooka has suffered, and will continue to suffer, irreparable harm from Classic Confections' acts and conduct complained of herein, unless restrained by law.

147.    Bazooka has no adequate remedy at law.

## COUNT VII
**(Unfair Competition and Passing Off, New York Common Law)**

148.    Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

149.    Classic Confections' aforementioned conduct is likely to confuse, and has already confused, consumers as to whether Classic Confections is an authorized distributor or affiliate of Bazooka, or whether the Jewel Pop candy products originated from or was sponsored or approved by Bazooka.

150.    Upon information and belief, Classic Confections' aforementioned conduct is willful, deliberate, intentional, and in bad faith.

151.    Classic Confections' conduct has caused and continues to cause damage and injury to Bazooka's brand, goodwill, and reputation.

152.    Classic Confections' aforementioned conduct constitutes unfair competition and passing off in violation of New York common law.

153.    By reason of Classic Confections' aforementioned conduct, Bazooka is being damaged and will continue to be damaged in an amount to be determined at trial.

## COUNT VIII
### (Injury to Business Reputation and Dilution, N.Y. Gen. Bus. Law § 360-l)

154.     Bazooka repeats and realleges each of the foregoing allegations as if fully set forth herein.

155.     Classic Confections' use of "Jewel Pop" on candy products is substantially similar to Bazooka's Mark.

156.     Classic Confections is also using the identical "Ring Pop" in advertising and offers to sell its Jewel Pop products.

157.     Classic Confections' candy products are inferior in quality to Bazooka's candy products.

158.     Classic Confections' aforementioned conduct and unauthorized use of Bazooka's RING POP Mark and a substantially similar designation to identify candy products impairs the distinctiveness of Bazooka's trademarks, candy products, and reputation in the market.

159.     Classic Confections' aforementioned conduct is likely to deprive Bazooka of the benefit and goodwill attached to RING POP Mark, injure Bazooka's business reputation, and dilute the distinctive quality of Bazooka's intellectual property in violation of New York General Business Law § 360-l.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury as to all issues so triable.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor on all counts of this Complaint and grant Plaintiff the following relief:

1.      Preliminarily and permanently enjoin and restrain Defendant, its agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or in participation with it or any of them from:

      i.      manufacturing, marketing, advertising, promoting, distributing, offering for sale, or selling any goods or products in connection with the RING POP Mark or Trade Dress, or any counterfeit, copy, or other designation that is confusing similar thereto;

      ii.      engaging in any activity that infringes Plaintiff's rights in and to its RING POP Mark or Trade Dress;

      iii.      using any word, name, mark, logo, design, or designation or doing any other thing likely to cause injury to Plaintiff's business reputation or dilution of the distinctive quality of its RING POP Mark or Trade Dress;

      iv.      using or making any other false designation of origin or false description or representation or doing any other thing calculated or likely to cause confusion, mistake or deception, including any act likely to deceive the public into believing that Defendant's business and goods are in any way associated or affiliated with or related to Plaintiff;

      v.      engaging in any activity constituting unfair competition with Plaintiff;

      vi.      copying, reproducing, displaying, distributing, transforming into a different medium, or using to create derivative works, Plaintiff's original works of authorship, or otherwise infringing the copyrights in Copyrighted Works ; and

vii.      any other conduct that violates Plaintiff's intellectual property rights under either federal or New York state law;

2.      Order that the RING POP product packaging and floor display are copyrighted works and entitled to protection from infringement under 17 U.S.C. § 101 *et seq.*;

3.      Hold that Defendant willfully infringed Plaintiff's trademarks, trade dress, and copyrights;

4.      Order Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied therewith, pursuant to 15 U.S.C. § 1116(a);

5.      Order Defendant to recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Jewel Pop products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody, or control of such distributors and retailers that infringe Plaintiff's RING POP Mark or Trade Dress, or bear any marks or designs that are confusingly similar to RING POP Mark or Trade Dress;

6.      Order Defendant to deliver up for destruction to Plaintiff any and all Jewel Pop products and any and all packaging, labels, tags, advertising, and promotional materials and any other materials in the possession, custody, or control of Defendant that infringe RING POP Mark or Trade Dress, or bear any marks or designs that are confusingly similar to the RING POP Mark or Trade Dress pursuant to 15 U.S.C. § 1118;

7.      Order Defendant to provide Plaintiff complete accountings for any and all monies, profits, gains, and advantages derived by Defendant from its manufacturing, advertising, marketing,

promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Jewel Pop products as described herein;

8.     Order Defendant to disgorge any and all profits derived by Defendant from acts of trademark infringement, trade dress infringement, dilution, copyright infringement, unfair competition, and passing off in violation of Plaintiff's rights as set forth herein, pursuant to 15 U.S.C. § 1117, 17 U.S.C. § 504, and other applicable law;

9.     Award Plaintiff three times Defendant's profits or three times Plaintiff's damages, whichever is greater, sustained as a result of Defendant's intentional and willful acts of trademark infringement, trade dress infringement, false designation of origin, and unfair competition pursuant to 15 U.S.C. §§ 1117(a) and (b);

10.    Award Plaintiff statutory damages as allowed by law;

11.    Award Plaintiff its reasonable attorneys' fees and taxable costs pursuant to 15 U.S.C. § 1117 and applicable law;

12.    Award pre-judgment and post-judgment interest at the maximum rate allowed by law; and

13.    Grant such other and further relief as the Court may deem just and proper.

Dated: New York, New York                    DENTONS US LLP
       June 3, 2022

                                   By:    ____/s/ Tomasita L. Sherer_____
                                          Tomasita L. Sherer
                                          Erika M. Lopes-McLeman
                                          Sara Gates
                                          1221 Avenue of the Americas
                                          New York, NY 10020-1089
                                          Tel. (212) 398-4871
                                          tomasita.sherer@dentons.com
                                          erika.lopes-mcleman@dentons.com
                                          sara.gates@dentons.com

                                          *Attorneys for Plaintiff The Bazooka Companies, Inc.*

## **VERIFICATION**

Jason S. Thaler, being duly sworn, deposes and says:

I, Jason S. Thaler, am general counsel of Plaintiff The Bazooka Companies, Inc. in the above-captioned action. I have read the foregoing Verified Complaint and Jury Demand and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged upon the information and belief and, as to those matters, I believe them to be true.

Dated:  New York, New York
        June 3, 2022

Jason S. Thaler

Sworn to before me
this 3rd of June, 2022

Notary Public

BALDEO C. DREPAUL
Notary Public, State of New York
Registration No. 01DR6349410
Qualified in Queens County
Certificate Filed in New York County
Commission Expires October 17, 2024

30